Good morning, and may it please the court and counsel, this appeal focuses on the question of whether 18 U.S.C. section 922 G3, which prohibits any user of any controlled substance from possessing a firearm, is constitutional as applied to the facts of this case. The brief actually also raised an argument that the statute is unconstitutional as its face and vague, but I am going to focus in this oral argument on the as applied issue. Now, this panel includes two of the justices that authored the Veasley opinion, which as I read it, acknowledged that in certain circumstances 922 G3 could be found to be unconstitutional as applied, which I believe disposes of the government's main argument that there is no application of 922 G3 that would violate the Second Amendment. The reason that 922 G3 is particularly susceptible to an as applied challenge is that it has a very broad scope. It applies to anyone who is defined as a user under 8th Circuit precedent. Regarding the- Theoretically, it's so broad, in fact, that, for example, in Minnesota, THC beverages and THC gummies and THC brownies and all these kinds of things are legal, and so somebody could go out literally to a restaurant, have a THC seltzer happen to have a gun on them when they go to the restaurant, and then be nailed for a federal offense of being a drug user in possession. I mean, it's very broad. You're absolutely right. Arguably, it's so broad that it's unconstitutional on its face, but Veasley recognized that there are some circumstances where it could be applied constitutionally, but I would think that those are sort of on the fringes of the circumstances where it could be applied, where someone is like, in a historical context, someone who is so mentally ill that they're dangerous to themselves or others. Well, PCP is the example that was used in the opinion. That makes people pretty bizarre. I've never seen anyone on PCP, but I've certainly read cases where people have been on PCP. Great. Yeah, I was trying to think before I came to argument about what substance would do that, but you're right. I think some hallucinogens would make a person so disassociated or even violent that you wouldn't want them to possess firearms. So that's not the substance we're dealing with in this case. So we're dealing with marijuana. Someone who had THC metabolites in their urine. That was Mr. Cooper. And my understanding is it's undisputed that he smoked marijuana three or four times a week, but the last time that he had smoked marijuana, I believe, was two days before. Is that correct? Or is there a dispute over that? That was part. There's no dispute about what the facts are because there's a factual stipulation. So that your memory is correct. And he also said this is in connection with his second count when he was in a vehicle and he had a gun in his waistband, that he said that the effect of using marijuana was to make him tired when he did use it. Not make him angry, not make him annoyed, not make him upset or anything else. Tired. What if the government presented evidence that any time he smokes marijuana, he has a reaction to it and it does make him violent. I've actually seen cases like that where marijuana makes people act bizarre, even violent, angry. Would that be enough, in your view, for the statute to still be applied constitutionally to someone? Without conceding the facial argument, I would think if there are circumstances where it can be applied constitutionally, it would be where it causes a violent reaction. Or at least intoxication such that a person is dangerous to himself or another. And that would be terror of the people. I think that's the comparison we were drawing. When you're waving a gun around or punching somebody, but then you pull out a gun and that kind of thing, that's terrorizing behavior. Yes. Again, I think would be circumstances where the statute could be applied in a constitutional manner, but we don't have anything close to that in Mr. Cooper's case. As a matter of fact, with respect to the first count, he was driving a vehicle. It was stopped for traffic violation and he was actually tested for impairment on the side of the road, found to be not impaired and allowed to drive off. So he was not intoxicated. He was not even impaired, let alone acting in a dangerous manner. So in this case, with respect to count one or the other count, where he was a passenger, not shown to be engaging in any sort of violent or aggressive manner or actually being under the influence even, this is, I would think, about the best facts a defense counsel is ever going to have for arguing that the statute is unconstitutional as applied because of the substance involved, because of the conduct of the defendant. It just is not consistent with the historical traditions. But you do have a, remind me of the record here, you do have a positive test in close proximity to the possession, right? I mean, what was the timing involved in this case? Well, I think as Judge Strauss indicated, it was within the last, again, we're going on what the defendant said. Right. He said it was two or three days ago, I believe. Right, use, not test. Okay, two or three days. Yeah. That's right. Okay. And, I mean, this is not part of the record, but, well, the statute doesn't require contemporaneous, use contemporaneous with possession. I mean, that's one reason that it's so broad and can apply in situations not consistent with our historical tradition of firearm regulation because just the presence of metabolite in your urine doesn't really give any indication that you're acting violently, that you're under the influence, or even how recently you consumed. So, we just have to rely on what the defendant said in this case. Well, in marijuana, my understanding, I've had cases on this as well, I think marijuana metabolites stay in your system more than any other drug. I think it's, or at least common drug, I think it's 30 days. I think you have, you can still be test positive for 30 days. I'm not sure about that. I'm not sure that's part of this record, but that's my understanding. Yeah, it's not part of the record, but I think you're correct. If a person is a, you know, uses frequently, it can stay in the system for a long time. So, I really don't have, oh, the only other thing I want to say is that so far, as far as I know, the Fifth Circuit is the only other circuit to have decided cases involving whether 922 G3 is unconstitutional or applied, and they twice now have found that it is, can be unconstitutional as applied, including a decision on January 5, United States v. Daniels, and I'm not aware of any other circuit that has come to any other conclusion that supports the government's argument that 922 G3 can never be applied unconstitutionally, so. Well, and Daniels, you mentioned Daniels, but Daniels is one that we relied on in Fleasley, the earlier version of Daniels, and then it was GVR'd by the Supreme Court, and then the circumstances sort of flipped, I think, and the newest version of Daniels actually relies on Fleasley. Okay, well, but I didn't realize that, but, I mean, it makes sense, so. But with that, I think I'll just reserve any additional time for rebuttal. All right, thank you, Counsel. Before we proceed with the argument of the appellee, the Court will be in recess for five minutes. Jeff, you may proceed. Did I pronounce your name correctly? It's Vanderstoep, Your Honor. Vanderstoep, I apologize. May it please the Court, Counsel. Good morning, my name is Adam Vanderstoep, I'm an Assistant U.S. Attorney with the U.S. Attorney's Office for Cedar Rapids, Iowa. Before I get started, I know there were a few questions regarding the facts of this case, so I just want to run through the facts and make sure the record is entirely clear on that. Opposing Counsel is correct, this was a bench trial submitted to the Court on stipulated facts. Those facts indicated that on September 18th, 2022, there was a shots fired call that officers responded to the defendant's residence, Mr. Cooper's residence. There they found someone to have sustained a gunshot wound to his arm, and there were also a number of firearms located at the residence, a 9mm handgun, a stolen 9mm handgun, ammunition, narcotics, paperwork with Mr. Cooper's name on it, as well as his employee ID card. For the first count of conviction, on September 22nd, 2022, so four days after that shots fired call at Mr. Cooper's residence, there was that traffic stop of Mr. Cooper driving his vehicle. He was found to have a Glock 20 on his person. As Opposing Counsel said, he was tested and ultimately released. About 15 minutes later, he was stopped again because he did not have a valid driver's license while he was driving his vehicle. Another person was in the car at the time of that second stop. There was a dog that alerted to it. Marijuana was found in the vehicle. A search warrant was obtained and there was a Glock 20 with a 30-round large capacity magazine attached to that firearm inside that vehicle. And that's the firearm that Mr. Cooper stipulated that he knowingly possessed for count one. Regarding his statements after that first count, he told officers that he smoked marijuana, but he said not very often. He said he smokes when he wants to have a good time or go out on the weekend. He said he last smoked it on Monday, September 19th, 2022, so three days before the traffic stop and one day after the shots fired call. He did provide a urine test that was positive for marijuana metabolites after that first count. And then he said he bought that Glock 20 that he had on him about a month ago, but told officers that he also bought a Glock 45 two weeks earlier, but it's usually the 20 that he carries around most often. Counselor, are the urine tests for the marijuana metabolites able to determine levels of intoxication or simply the presence of metabolites? Your Honor, I don't want to give you misinformation. As far as I'm aware, it detects the quantity of metabolites that are in the system. I don't know if that determines the level. In part. So, is there any evidence in the record as to what quantity that would produce a certain level of intoxication or incapacitation? Not that I'm aware of, Your Honor. I believe all controlled substances will impact people differently. Some people have higher tolerance for marijuana than others. Same like other hard controlled substances. Some people will have different tolerances depending on what it is. There's nothing in the record here. With alcohol, we have certain blood levels that are legal and some that aren't. There's no such level for marijuana. Not that I'm aware of, Your Honor. Not that I know that there's anything in the record to indicate, Your Honor. What you just mentioned, isn't that a good reason to have an as-applied challenge? I just think about, you know, I'm going to extend the earlier hypothetical. You go out to a restaurant. You have a THC drink in Minnesota. You come home. And we have very broad laws or interpretation in the Eighth Circuit that says if it's anywhere in your house and you have control and possession of it, you are in possession of a firearm under the G-crime. So you may have a gun in your basement in a lockbox. And technically, you have violated the statute just by having a THC drink, which is legal in Minnesota. And you may be somebody who literally falls asleep when they go home with marijuana. So that's a pretty good reason to say that person might not be the right person to charge under 922 G-3. Your Honor, I understand your analogy and the point you raised. Ultimately, marijuana and THC, while it may be legal in some states, it's still illegal at the federal level. And I know I haven't gotten to count two yet, but just kind of addressing that. It's the government's position that 922 G-3's categorical prohibition on possession of a firearm by an unlawful user of a controlled substance is constitutional in all of its applications. And the reason for that is because this is consistent with a historical analogs analysis. Beasley disagrees with you, though. When you say Beasley disagrees, Your Honor, you're saying because of the line about the elderly grandmother who has a gun tucked away. Well, that and also the fact that, and this is, I think, the misunderstanding that Judge Williams had. I don't think he understood what Bruin required under the Second Amendment. I think he just blew it, quite frankly. Which is the analogs are the same under Bruin, whether you're talking as an as-applied challenge or a facial challenge. It's not as if in a facial challenge we go, oh, wow. So a categorical ban, that's OK. And we're going to look at one set of analogs. And then you look at a different set of analogs when you're evaluating an as-applied challenge. Those same analogs apply to an as-applied challenge, mental health, terror of the people, perhaps credible threat to public safety under Rahimi. Those are all the same things. And so it's part of the analysis. And in fact, when you evaluate a facial challenge, you have to look at whether it's unconstitutional in all of its applications. So you necessarily have to look at the as-applied challenges. So I don't see how he could have possibly concluded, well, Beasley's not controlling. Your Honor, I don't think that's what he said. It was Beasley's not controlling. I think it was what defense counsel was arguing to the judge. And I think ultimately what he said was any information there about Beasley suggesting that for a 922G3 prohibition to apply, that it requires some sort of illegal and dangerous or terrifying behavior with a firearm as a result of drug abuse. I don't know if that's what Beasley held. Beasley went through the historical analogs to determine whether or not there was a historical tradition of regulation. And like Your Honor said, it was the mental health, it was the terrifier laws, and then also the intoxication laws. If I'm remembering correctly, this court said mental health and the terrifier laws supported finding that it was not at least facially unconstitutional.  But the intoxication went the other way. And that's the key. And that's why I think that the logical implication, if not the explicit subholding, is that for mere intoxication is not enough. So you have to fit into one of those other categories. I understand, Your Honor. But I think when you said Judge Williams blew it, ultimately what he was saying is it did not stand for the proposition what defense counsel was suggesting it did. He did indicate that this court did go through the historical analysis and found that there is historical tradition showing that 922g3 is not facially unconstitutional. What he did was it was not a means and scrutiny test like defense counsel suggested. He said in the historical analysis, Congress has historical precedence and historical tradition of prohibiting categories of people who they found to be dangerous. That's consistent with the historical analogs analysis. In this court's decision in Jackson 2, as I'll refer to it as, this court held that if the historical regulation of firearms possession is viewed instead as an effort to address the risk of dangerousness, then the prohibition on possession by convicted felons still passes muster under historical analysis. Legislatures historically prohibited possession by categories of persons based on the conclusion that the category as a whole presented an unacceptable risk of danger if armed. The problem you have is Jackson 2 is after Veasley. We go with the first in time. So to the extent, if Jackson is in any way inconsistent with Veasley, then we go with Veasley. Your Honor, Veasley doesn't talk about the specific Congress's tradition of categorizing groups as a whole. Veasley discussed whether or not there was a facial unconstitutionality of a 922 G3. I don't know if they're in conflict with each other. Well, to the extent you're saying that we're not going to follow the historical analogs in Veasley, they are in conflict with each other. I mean, but they're not in conflict with each other because Jackson doesn't apply because it's a 922 G1 case. I mean, that's the easiest answer. The easiest answer also is in Heller, it was felons in possession. Criminals were one of the listed presumptive constitutional. Drug users were not. They just weren't. Well, let's dig down into that. What historical analog are you relying on? Which category? The government's relying on all three of the analogs that were discussed by this court in Veasley. The government believes the intoxication laws are historical analogs for a blanket group. Let's look at that one. Isn't there a very fundamental difference between a user of alcohol and an intoxicated person? In other words, the category was those who were intoxicated, not those who used alcohol. Yes, Your Honor. So you're saying is there a difference between a user of alcohol, someone who has a drink, and someone who's intoxicated by alcohol? Right. Would your argument be the same in defense of 922 G3 if the statute prohibited any user of alcohol from possessing a firearm? So you're saying if Congress created a using the same analogy. I think it's different. And I'll be honest, under alcohol, I have not gone through the full analysis of whether or not historical traditions would support such a law. However, the one thing that I can kind of note immediately, the difference between alcohol versus controlled substances such as marijuana, methamphetamine, and cocaine is alcohol is not illegal. So we're talking unlawful. Let's suppose this is during the Prohibition era, and someone had their firearms taken away from them. Would your legal analysis be the same? Your Honor, again, I'm not able to provide you with an adequate answer as to alcohol because I have not done a full in-depth historical look back regarding alcohol. So in the parentheticals to Beasley, they talk about alcohol. The cases cited in Beasley talk about alcohol. And it's basically the same. It's the exact same analogy. So I think to be consistent, the government would have to say yes. Your Honor, and again, since I have not done that full historical analysis of alcohol, I cannot give you that definitive answer one way or the other. And the government cannot do it. Again, right now, based off of where we're at, alcohol is not illegal. Controlled substances are illegal. That's kind of what I can think of off the top of my head. But I have not done that full historical analysis of background. The category that you seem to be relying on, then, is possession of something that's illegal. Your Honor, I was just simply, that was just an example of my difference between alcohol versus marijuana or controlled substances, the unlawful access. I'm just trying to get back to, OK, what is the historical analog? It seems to be that you're broadening that in some way. No, the historical analogs, the two that this court accepted in Veasley was mental health and terrifier of the people. The government believes all three, understanding that the court did not accept the intoxication laws, but believes that there are still those other two, terrifier of the people, as well as the mental health laws that support 922g3. And then take that in conjunction with Jackson about the historical traditions of Congress prohibiting categories of groups that they determined to be dangerous. When you take the two together, it supports that 922g is constitutional in all its applications. That's the position of the government, Your Honor. I do want to, before I forget, and I know I'm running out of time here, I do want to get to the facts of that second count. The second count was about six months after the first count. There was another traffic stop, this time on April 3rd, 2023. This time he was in the back of a vehicle. He was asked to get out of the vehicle, and he was asked, do you have any weapons on him, to which his answer was no. During a pat-down search, however, there was a Glock 22 that was found in his waistband that was also equipped with a 19-round magazine that had one in the chamber. He did stipulate also that he knowingly possessed this gun. This gun was also stolen. And then also, after that one, there was another urine test, which again, tested positive for marijuana metabolites. In this interview, following his April 3rd, 2023 traffic stop, he told officers that he bought that Glock 22 within the past two days. He said he started using marijuana around the age of 15, which was 21 at the time of the stop. He also said he smoked until, at least up until that arrest, April 3rd, 2023, and on average would smoke three to four times per week. He said he last smoked marijuana about two days before, which is about the same time he said when he got that Glock 22, sorry, that Glock 22. And he said, regarding defense counsel's representation about marijuana makes him tired, he said, now he's taking medication and marijuana makes him tired. So again, I just wanted to clarify the facts regarding both those two counts. So I wanted to ask you, so in light of both Veasley and Daniel, so the Fifth Circuit thinks almost the exact same thing we do as in Veasley. And most district courts have not, that have done it in either the Fifth, or actually the Third has also applied Veasley, or some district courts in the Third have, and have done these as-applied challenges, and have actually done it the way Veasley sets out, not as a categorical rule. Do you have any idea what the viewpoint is of the Department of Justice in terms of defending the district courts who have done that more extensive analysis and have not done the categorical ban analysis? I do not know what the view of the Department of Justice is on those cases and the other districts, Your Honor.  I know that the Department of Justice likes to take a consistent, a consistent position, which is why it sounds like, I understand if you don't know, you can't say. I'm just, it's just odd, because, and this gets back to Judge Williams, from what I can tell, Judge Williams may be the only judge in the country that has taken the approach, we tried to search, or I tried to search, I sat in Quayside at both Daniel's and Veasley, and from what I can tell, no other district court in the country has taken a categorical approach post-Veasley or Daniel's. Does that change anything for you? Do you still think the categorical approach is the way to go? I still think the categorical approach is the way to go, Your Honor. And again, even if the court does not agree that it can be categorically prohibited, in this case, Mr. Cooper is not like the 80-year-old grandma who's got the firearm tucked away in her home and used marijuana the night before. He's out and about, in a car, multiple occasions, with stolen firearms in one of the instances, large-capacity magazines. He is the danger of misuse that this court would envision. So even if this court does not agree with the categorical approach, he is not the 80-year-old grandmother. Thank you. All right. Thank you, Mr. Vanderstein. Mr. Meyer, you have four minutes and 25 seconds for rebuttal. So regarding Judge Williams, I'm just quoting from his comments during the motions and sentencing hearing. This is on page 27. And you're right. He does say that Congress can identify the danger, recognize the need for regulation, regulate the possession of firearms by a class of people who, in their view, pose a danger to the community without attaching a requirement that there be some showing that the person is currently showing signs of being a danger to the community. Well, to be fair to Judge Williams, and I want to, he was faced with Jackson 1 and Beasley sitting side by side. Rahimi had not yet been decided. And he's doing what the government did, except for there, Jackson 1 was first in time. Jackson 1 was since vacated. But he was sitting there going, OK, which one do I follow? And I think he might have made the wrong decision. But he was faced with a choice of which to follow. And he followed Jackson 1. So I just wanted to, I don't want to be too harsh on Judge Williams. But he was in a different, what I'm really saying is he was in a different position than we're in now. OK. But I wanted to comment on that finding. I think Beasley indicated this, too. But when Daniels, too, was confronted with this argument that Congress can strip Second Amendment rights of anyone they designate as dangerous, citing what happened in 1662 in the English Militia Act, they found no, Congress can't just designate people as being too dangerous and strip them of their Second Amendment right because there were no class of persons at the founding who were deemed dangerous for reasons comparable to marijuana use. And I think that's entirely consistent with Beasley as well. So with respect to the suggestion by the government that, as applied, Mr. Cooper violated, could be found to have violated 922 G3, there aren't any facts that indicate that he was engaged in conduct that historically was found to be sufficient to strip somebody of their Second Amendment rights. Suppose the day before he stopped, he's engaged in a drive-by shooting and killed somebody. I'm just, this is hypothetical. I know that these aren't these facts. Next day, he's caught with marijuana. It turns out he, or cocaine or whatever, but it turns out he smoked whatever, ripe crack or marijuana, right before. And he smoked it the day they came. And he tests positive of the drug. Don't you think that's good enough? I mean, that's terror of the people. That's, maybe it's not mental illness, but it's terror of the people. And that person can constitutionally be convicted, even if the marijuana or the cocaine didn't cause the violent behavior. Yeah, I would say that that would be a case, again, more out towards the fringes of what can be regulated. But if you have more or less contemporaneous use, possession, and engaging in violent behavior, then it would be, unless the statute is unconstitutional on its face, it would be difficult to argue that that's not a case where it could be applied. Can I ask one more question? Well, and this is the important part, is generally speaking, the government only, not only, predominantly charges people who have committed other crimes. Or they're suspected of other crimes. Or they're suspected of dealing drugs. Or they're suspected of doing a violent crime. And it's kind of like the old Al Capone thing. We can't get him for what he was doing illegally, so we're going to nail him for his taxes. That's my sense. And so even if we were to hold as-applied challenges are valid, and maybe Mr. Cooper wins, I'm not so sure that a lot of people won't be found to be dangerous and within the ambit of the statute. And the as-applied challenge will fail. I just want to pose that to you. Well, sure. I mean, if a person is engaged in illegal behavior otherwise, then they should be prosecuted for that. They shouldn't use, you know, 922 G3 to try to indirectly punish them for conduct that really is, should be punished by a different statute. I guess would be my response. All right. Thank you, counsel. Thank you. And Mr. Meyer, it's my understanding you were appointed to represent Mr. Cooper under the Criminal Justice Act, and the court appreciates your service. Thank you very much, Your Honor. The case is submitted, and the court will issue an opinion in due course.